# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

STEVEN M. LEONHART,

    Petitioner,

v.

WARDEN, CHARLOTTE JENKINS,

    Respondent.

CASE NO. 2:16-CV-911
JUDGE JAMES L. GRAHAM
Magistrate Judge Kimberly A. Jolson

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, seeks a writ of habeas corpus pursuant to 28 U.S.C § 2254, the Antiterrorism and Effective Death Penalty Act ("AEDPA"). This matter is before the Court on the Petition (Doc. 1), Respondent's Return of Writ (Doc. 11), Petitioner's Traverse (Doc. 17), and the exhibits of the parties. For the reasons that follow, the undersigned **RECOMMENDS** that the Petition be **DENIED** and that this action be **DISMISSED.**

## I. FACTS AND PROCEDURAL HISTORY

The state appellate court summarized the facts and procedural history of this case as follows:

> In January 2012, Leonhart drove his all-terrain vehicle to the home of Willard Baker, where Leonhart's ex-girlfriend, Holly Fickiesen, was staying. Leonhart, who was armed with a loaded shotgun and intended to kill Fickiesen, waited for Baker to leave for work. When Baker left, Leonhart forced his way through a door and assaulted Fickiesen. Holding her at gunpoint, Leonhart told her that he was going to shoot her, set the house on fire, and then shoot himself.
>
> When Baker unexpectedly returned to the home and walked into the kitchen, Leonhart shot him to death. Fickiesen fled the house and pounded on the door of the next-door neighbor, Mike Lisk. When Lisk opened the door, Fickiesen ran inside and hid. Leonhart then struggled with Lisk, knocking him down and breaking his hip. After Leonhart fled, the police subsequently arrested him and obtained his confession to breaking into Baker's house and shooting him.

A Washington County grand jury charged Leonhart with aggravated murder and other felonies, the trial court determined that Leonhart was indigent and appointed him trial counsel. Leonhart entered a plea of not guilty to the charges and also filed a motion to waive court costs because of his indigency . . . .

Leonhart then filed a written plea of not guilty by reason of insanity and suggestion of incompetency. The trial court ordered evaluations to determine his competency to stand trial and his mental condition at the time of the commission of the charged offenses. Denise A. Kohler, Ph.D., a clinical and forensic psychologist, diagnosed Leonhart with a severe mental illness consisting of major depression and alcohol dependence. But Dr. Kohler concluded that Leonhart was capable of understanding the nature and the objective of the proceedings against him and was able to assist his attorney with his defense. Dr. Kohler further concluded that although Leonhart suffered from a severe mental disease consisting of anxiety and depression at the time the crimes occurred, he knew the wrongfulness of his actions.

Following a hearing at which the parties stipulated to the report's conclusion of his competency to stand trial, the trial court determined Leonhart was competent to stand trial because he was capable of understanding the nature and objective of the proceedings against him and was capable of assisting in his defense.

Leonhart withdrew his former pleas of not guilty and pleaded guilty to the charges of aggravated murder and the accompanying specifications, one of the two counts of aggravated burglary, and felonious assault. The state dismissed the remaining charges. The trial court conducted a colloquy to determine whether Leonhart was fully informed of his rights and understood the consequence of his guilty plea. Upon being satisfied that Leonhart knowingly, intelligently, and voluntarily entered his plea and waived his constitutional rights, the court accepted his plea and convicted him of the charges upon the facts stipulated by the parties.

After a hearing the trial court imposed a sentence of life with parole eligibility after 30 years on the aggravated murder charge, 3 years for the accompanying firearm specification, 11 years on the aggravated burglary charge, and 8 years on the felonious assault charge. The court specified that these prison sentences would be served consecutively so that the aggregate sentence would be life without parole eligibility until he had served 52 years. The court also ordered the requested forfeiture, ordered restitution in an undetermined amount, and ordered that costs be taxed against him. At the conclusion of the hearing, the trial court noted that it understood that Leonhart was indigent and was unable to hire counsel

for appeal and that counsel would be appointed for purposes of appeal. In November 2013, the trial court issued a journal entry reflecting its orally announced sentence, except that it did not specify any restitution order or resolve Leonhart's original kidnapping charge.

We dismissed Leonhart's initial appeal for lack of a final, appealable order because the sentencing entry failed to address both the restitution order made at the sentencing hearing and the disposition of the kidnapping charge.

Then through new counsel Leonhart filed a motion to withdraw his guilty plea, claiming that he had been advised by his trial counsel that he would be eligible for parole after 30 to 35 years in prison. Leonhart contended any lengthier sentence would be tantamount to life in prison without parole. In a reply to the state's response, Leonhart included the affidavit of his trial counsel stating that: (1) at a pretrial conference the trial court stated that it would not impose either the maximum sentence for aggravated murder of life without the possibility for parole nor the minimum sentence for that charge, (2) based on the trial court's statement, trial counsel advised Leonhart that he would receive a maximum sentence of life with parole eligibility after 35 years, (3) trial counsel advised Leonhart that any sentence greater than that would be the equivalent of a life sentence without the possibility of parole, (4) after Leonhart entered his guilty plea, trial counsel "was shocked" when the trial court imposed an aggregate sentence of life without the possibility of parole after 52 years, and (5) if he had known that the trial court would impose that sentence, trial counsel would have advised him to proceed to trial rather than enter a guilty plea. Leonhart also filed a supplemental affidavit in which his mother confirmed trial counsel's recollection of his statement to Leonhart that pleading guilty would result in a maximum sentence of life with the possibility of parole after 35 years, which would give him a meaningful opportunity to be released from prison.

The trial court overruled the motion because the record "definitively shows that Defendant's guilty pleas were entered knowingly, intelligently, and voluntarily at a hearing where he was repeatedly advised of the potential maximum sentence." Leonhart then filed a pro se motion and supporting affidavit to withdraw his guilty plea because the trial court purportedly accepted his plea without ensuring that he understood his right to have the court require the state to prove his guilt beyond a reasonable doubt, and that his plea was not voluntary because of his mental illness. The trial court also denied this motion.

In September 2013, the trial court entered an amended sentencing entry in which it included an order that Leonhart pay restitution of $3,352.51 to Lisk and specified that the kidnapping charge had been dismissed. The remainder of the entry was the same as the prior sentencing entry.
This appeal ensued.

II. ASSIGNMENTS OF ERROR

Leonhart assigns the following errors for our review:

1. The Trial [Court] Erred When It Overruled Appellant's Motions to Withdraw his Guilty Pleas.

2. The Trial Court Erred When It Did Not Merge The Offenses of Aggravated Burglary and Felonious Assault.

3. The Trial Court Erred When It Ordered that All Three Sentences Be Served Consecutively.

4. The Trial Court Erred When It Imposed Consecutive Sentences as to Counts 5 and 6 and Ordered that All Sentences Be Served Consecutively.

5. The Trial Court Abused its Discretion When It Ordered Appellant To Pay Court Costs And Entered A Judgment.

6. The Trial Court Erred When It Ordered Appellant to Make Restitution.

7. The Acts and Omissions Of Trial Counsel Deprived Appellant Of His Right To Effective Assistance Of Counsel.

*State v. Leonhart*, No. 13CA38, 2014 WL 7251568, at*2–4 (Ohio Ct. App. December 16, 2014).

On December 16, 2014, the state appellate court sustained Petitioner's fifth and sixth assignments of error and reversed and remanded the trial court's rulings on the matters of court costs and restitution. *Id*. at *16–18. The state appellate court also overruled Petitioner's remaining assignments of error, including Petitioner's seventh assignment of error for the ineffective assistance of counsel. *Id*. at *1−2, 18–19. On April 8, 2015, the Ohio Supreme Court declined to exercise jurisdiction over Petitioner's subsequent appeal, which included his ineffective assistance of counsel claim. *State v. Leonhart*, No. 2015-0142, 142 Ohio St. 3d 1425,

28 N.E.3d 123 (Ohio 2015). On November 9, 2015, the United States Supreme Court denied Petitioner's petition for a writ of certiorari. *State v. Leonhart*, No. 15-5957, 136 S. Ct. 483 (2015).

On September 22, 2016, Petitioner, with the assistance of counsel, sought a writ of habeas corpus pursuant to 28 U.S.C § 2254. (Doc. 1). In his single ground for relief, Petitioner asserts that he was denied the effective assistance of counsel with respect to his guilty plea. He asserts that "[c]ounsel performed deficiently in his statement to [Petitioner] concerning the sentence he would receive" and that Petitioner was prejudiced by counsel's deficient performance.

## II. DISCUSSION

Respondent asserts that Petitioner's claim has no merit. This Court agrees.

### A. Standard

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, AEDPA's familiar standards apply. The United States Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, ___ U.S. ____, ____, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102, 131 S.Ct. 770, 786 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Further, under AEDPA, the factual findings of the state court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Accordingly, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)). The United States Court of Appeals for the Sixth Circuit has explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

6

*Coley*, 706 F.3d at 748–49. The burden of satisfying AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S. 170, 181, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011).

**B.    Application**

Petitioner alleges violations of the Sixth and Fourteenth Amendments to the United States Constitution. (Doc. 1). He asserts he received ineffective assistance of counsel during his plea proceedings because his trial counsel misled him about the terms of the sentence he faced if he pleaded guilty. (*Id.*). Specifically, Petitioner asserts that counsel incorrectly advised him that in exchange for his guilty plea, he would be sentenced to life imprisonment with eligibility for parole after no more than thirty-five years. (*Id.*).

Respondent states that Petitioner's instant claim was presented in his first assignment of error in direct review, and in his second proposition of law to the Ohio Supreme Court. (Doc. 11). On direct review, however, Petitioner's ineffective assistance claim was presented in his seventh assignment of error, which incorporated by reference arguments he made in his first assignment of error, a broader challenge to the validity of his guilty plea and an adverse ruling on Petitioner's motion to withdraw it. (Doc. 11-1, PAGEID # 176−80, 199−202). In any event, Respondent correctly concedes that Petitioner's ineffective assistance of counsel claim has been fairly presented, exhausted. and has not been waived. As such, the state appellate court rejected this claim on the merits.

> In his seventh assignment of error [Petitioner] asserts that the acts and omissions of his trial counsel deprived him of his right to the effective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *State v. Short*, 129 Ohio St. 3d 360, 2011–Ohio–3641, 952 N.E.2d 1121, ¶ 113; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Knauff*, 4th Dist. Adams No. 13CA976, 2014–Ohio–308, ¶ 23. The defendant has the burden of proof because in Ohio, a

7

> properly licensed attorney is presumed competent. *State v. Gondor*, 112 Ohio St. 3d 377, 2006–Ohio–6679, 860 N.E.2d 77, ¶ 62. Failure to satisfy either part of the test is fatal to the claim. *Strickland* at 697; *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989).
>
> In this assignment of error [Petitioner] reiterates claims from his previous assignments. He claims that his counsel was ineffective for giving erroneous advice about the length of his potential aggregate maximum sentence. See his first assignment of error. However, [Petitioner] is unable to prove a reasonable probability of a different outcome given: 1) the trial court's detailed, explicit admonishments at the plea hearing, 2) [Petitioner's] assurance that he understood that his potential maximum aggregate sentence was life imprisonment with the possibility of parole after 52 years and 3) that he understood that the trial court would impose sentence notwithstanding any promises or representations by anybody else.

*Leonhart*, 2014 WL 7251568, at *18.

The longstanding test for determining the validity of a guilty plea under the Fourteenth Amendment is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S. Ct. 366, 369, 88 L. Ed. 2d 203 (1985) (internal quotations omitted). A prisoner may challenge the entry of a guilty plea on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Id.*; *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed. 2d 235 (1973).

"In all criminal prosecutions," the Sixth Amendment affords "the accused . . . the right . . . to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The two-part test announced in *Strickland v. Washington*, 466 U.S. 556 (1984), governs a challenge to a guilty plea on the basis of a claim of ineffective assistance of counsel. *Hill*, 474 U.S. at 58, 106 S.Ct. 366. Because *Strickland* provides the general standard for challenges based on the Sixth Amendment right to effective assistance of counsel,

Petitioner's challenges under the Fourteenth and Sixth Amendment collapse into a single analytical framework. *Plumaj v. Booker*, 629 F. App'x 662, 665 (6th Cir. Oct. 20, 2015).

*Strickland* requires a petitioner claiming ineffective assistance of counsel to demonstrate that his counsel's performance was: 1) deficient, and that, 2) the petitioner suffered prejudice as a result. *Strickland*, 466 U.S. at 687; *Hale v. Davis*, 512 F. App'x 516, 520 (6th Cir. 2013). A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below an objective standard of reasonableness.'" *Poole v. MacLaren*, No. 12-1705, 547 F. App'x 749, 2013 WL 6284355, at *5 (6th Cir. Dec. 5, 2013) (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (internal quotation marks omitted) and citing *Strickland*, 466 U.S. at 687). To make such a showing, a petitioner "must overcome the 'strong [ ] presum[ption]' that his counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Poole*, 547 F. App'x 749 (quoting *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052). "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).

In cases like this, involving entry of a guilty plea, the prejudice inquiry "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. A petitioner must show a reasonable probability that, but for counsel's errors, he would have not pleaded guilty and would have insisted on going to trial." *Id.*; *see also Smith v. United States*, 348 F.3d 545, 551–52 (6th Cir. 2003). "[T]o obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372

9

(2010). This is an "objective" inquiry that takes into account factors such as "the strength of the evidence against a defendant, the lack of viable defenses, and the benefits of the plea bargain." *Plumaj*, 629 F. App'x at 667 (citing *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012); *Haddad v. United States*, 486 F. App'x 517, 522 (6th Cir. 2012)). Nonetheless, "a claim of ineffective assistance of counsel based on allegedly misleading information given by counsel about the terms of a plea agreement never constitutes an 'extraordinary circumstance' warranting relief when the trial court has conducted a proper, clear, and thorough plea colloquy." *Childress v. Stephenson*, No.17-1273, 2017 WL 4083627, at *1 (6th Cir. Aug. 1, 2017) (quoting *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999)).

Additionally, and importantly, the United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Harrington v. Richter*, 562 U.S. 86, 105, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). The Court observed that while "'[s]urmounting *Strickland*'s high bar is never . . . easy[]' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is even more difficult." *Id.* (quoting *Padilla*, 559 U.S. at 371) (and citing *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052). The Court instructed that the standards created under *Strickland* and § 2254(d) are both "'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

With this admonition in mind, the Court finds that the state appellate court reasonably concluded that Petitioner cannot demonstrate the requisite prejudice under *Strickland*. The state

10

appellate court explicitly found that Petitioner could not demonstrate a reasonable probability that, but for counsel's errors, he would have not pleaded guilty and gone to trial. *Leonhart*, 2014 WL 7251568, at*18. The state appellate court reasoned that misleading information provided to Petitioner by counsel was remedied during the plea hearing where it was made clear that Petitioner faced a possible sentence of life with the possibility of parole after fifty-two years. *Id*. Applying the appropriate doubly deferential standard, this Court finds that this was not an unreasonable conclusion. The state trial court specifically advised Petitioner that he faced a maximum sentence of life with the possibility of parole after fifty two years if he accepted the plea agreement. (Doc. 12-1, TR. 33, 39). Petitioner indicated that he understood that this was the possible sentence he faced and that he knew that any promises made to him by anyone else were not binding upon the trial court. (Doc. 12-1, TR. 39, 41).

> THE COURT: Now, before you plead guilty, I need to be certain that you understand these proceedings. You do understand the nature of the charges against you?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You understand the maximum penalty the Court could impose, is life imprisonment with a possibility of parole after 52 years and a fine of $35,000?
>
> THE DEFENDANT: Yes, ma'am.

(Doc. 12-1, TR. 39).

> THE COURT: You understand that if any promise has been made to you by anyone, that those promises are not binding on the Court, and if you plead guilty, the Court alone—that is, the Judge—will decide your sentence and you could receive the maximum penalty prescribed by law?
>
> THE DEFENDANT: Yea—yes.
>
> THE COURT: Other than the agreement that's been stated in open court, was there any other promise made to you by any person to get you to plead guilty today?

>THE DEFENDANT: Just, other than the—low end would be taken off and the high end would be taken off.
>
>THE COURT: All right. But other than that, there's no other promise?
>
>THE DEFENDANT: No.

(Doc. 12-1, TR. 41).

Having been made aware by the trial court that he faced a sentence of life with the possibility of parole after fifty-two years, it was reasonable for the state appellate court to conclude that Petitioner could not demonstrate prejudice when he received that exact sentence. *See Boyd v. Yukins*, 99 F. App'x 699, 704–05 (6th Cir. 2004) (holding that a petitioner who pleaded guilty could not demonstrate the prejudice element of *Strickland* even if her counsel misinformed her that she faced a maximum sentence of fifteen years—the trial court correctly informed her that she faced a possible life sentence); *McAdoo v. Elo*, 365 F.3d 487, 499–500 (6th Cir. 2004) (holding that a petitioner who claimed that his attorney implied he would only be sentenced to twenty years as opposed to life could not demonstrate the prejudice element of *Strickland* when the trial court informed him that he was eligible for a life sentence); *Ramos*, 170 F.3d at 565 (holding that petitioner could not demonstrate the prejudice element of *Strickland* even if counsel's erroneous advice regarding probation eligibility constituted deficient performance; the trial court's proper colloquy cured any misunderstandings that petitioner had about his plea); *Childress*, 2017 WL 4083627, at *1 (holding that a petitioner could not demonstrate the prejudice element of *Strickland* even if counsel incorrectly promised petitioner he would be eligible for early release— no mention was made of early release at the plea hearing where petitioner also repeatedly affirmed that there were no other promises that induced him to plead). *See also Lee v. United States*, __ U.S. ___, n. 4, 137 S.Ct. 1958, 1968, L.Ed. 2d (2017)

(noting with favor that "several courts have noted that a judge's warnings at a plea colloquy may undermine a claim that the defendant was prejudiced by his attorney's misadvice") (citing *Boyd*, 99 F. App'x at 705)).

Trying to escape these cases, Petitioner asserts that crediting his in-court statements during the plea hearing creates a "per se rule" that it would "not matter what advice trial counsel had given [Petitioner] . . . because the trial court . . . had correctly advised the defendant of the maximum sentence," and that the Sixth Circuit previously rejected such a per se rule in *Lyons v. Jackson*, 299 F.3d 588, 599 (6th Cir. 2001). In *Lyons*, however, defense counsel performed deficiently by failing to tell the sixteen-year-old defendant that even if he pleaded guilty to first-degree murder and received a juvenile sentence, the prosecutor could appeal and his juvenile sentence could be reversed. 299 F.3d at 598. Thus, even though the trial judge informed the defendant that he could impose an adult sentence, the defendant was prejudiced when the prosecution successfully appealed the defendant's juvenile sentence and the appellate court ordered that he be sentenced as an adult. *Id.* at 599. The Sixth Circuit reasoned that "[a]n awareness of the sentencing range available to the trial judge is not the same as an informed understanding that a sentencing judge's decision is subject to reversal." *Id.*

In this case, however, unlike *Lyons*, there is no mismatch between the erroneous advice provided by counsel and the remedial information provided by the trial court. Petitioner's counsel incorrectly informed him that if he accepted the plea, he faced a sentence of life with the possibility of parole after no more than thirty-five years. The trial court specifically informed Petitioner otherwise: The trial court told Petitioner that he was subject to a sentence of life with the possibility of parole after fifty-five years. Further, Petitioner indicated that he understood that this was the possible sentence he faced, and, ultimately, that is the exact sentence he

13

received. Accordingly, the state appellate court's decision was not contrary to, or an unreasonable application of, federal law; nor was it based on an unreasonable determination of the facts in light of evidence presented to the state court.

## III. RECOMMENDED DISPOSITION

For the foregoing reasons, the undersigned **RECOMMENDS** that this action be **DISMISSED**.

### Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED**.

Date: January 16, 2018                  /s/ Kimberly A. Jolson
                                                            KIMBERLY A. JOLSON
                                                            UNITED STATES MAGISTRATE JUDGE