IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

STEVEN M. LEONHART,

    Petitioner,

v.

WARDEN, CHARLOTTE JENKINS,

    Respondent.

CASE NO. 2:16-CV-911
JUDGE JAMES L. GRAHAM
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

On January 17, 2018, the Magistrate Judge issued a *Report and Recommendation* ("R&R") recommending that the petition seeking a writ of habeas corpus under 28 U.S.C. § 2254, be denied and that this action be dismissed. (ECF No. 18.) Petitioner filed timely *Objections* to that R&R. (ECF No. 21.) Pursuant to 28 U.S.C. § 636(b), the Court has conducted a *de novo* review. For following reasons, Petitioner's *Objections* (ECF No. 21) are **OVERRULED**. The R&R (ECF No. 18) is **ADOPTED** and **AFFIRMED**. This action is hereby **DISMISSED**.

The Court further **DECLINES** to issue a certificate of appealability ("COA").

Petitioner alleges that he received ineffective assistance of counsel. Petitioner asserts that his attorney advised him that in exchange for his guilty plea he would be sentenced to life imprisonment with parole eligibility after no more than thirty-five years but that after his guilty plea was accepted, he was instead sentenced to life with parole eligibility after fifty-two years. The Magistrate Judge concluded that the state appellate court reasonably determined that even if Petitioner could establish that his lawyer's performance was deficient under the first prong of the two-part test for attorney effectiveness in *Strickland v. Washington*, 466 U.S. 556 (1984),

Petitioner could not establish *Strickland's* prejudice prong. The Magistrate Judge concluded it was reasonable for the state appellate court to find that Petitioner could not show that but for the deficient performance, Petitioner would not have pleaded guilty— the state trial court remedied any misinformation that Petitioner received from his lawyer about parole eligibility by explicitly informing him that the maximum aggregate sentence that he could receive was life with parole eligibility after 52 years. (*Transcript*, ECF No. 12–1, at PAGE ID # 449, 455.)

Petitioner objects on the basis that the Magistrate Judge used the wrong standard of review. Petitioner asserts that the standard of review described in the AEDPA does not apply to his claim because the state trial court did not hold an evidentiary hearing to resolve a factual dispute about whether his attorney performed deficiently. This objection is without merit. As the Magistrate Judge explained, the state court did not reach the deficiency prong of *Strickland*, finding instead that Petitioner could not establish the prejudice prong. *See State v. Leonhart*, No. 13CA38, 2014 WL 7251568, at *18 (Ohio Ct. App. December 16, 2014). When a state court relies on one prong of *Strickland* to adjudicate an ineffective assistance of counsel claim, "the cases mandate AEDPA deference to that prong and de novo consideration of the unadjudicated prong." *Rayner v. Mills*, 685 F.3d 631, 639 (6th Cir. 2012).[1] The Magistrate Judge reviewed the state appellate court's analysis of the prejudice prong and properly afforded it "double deference" under the AEDPA. *See Harrington v. Richter*, 562 U.S. 86, 105 (2011).

Petitioner also makes two related objections to the Magistrate Judge's determination that the state appellate court reasonably determined that Petitioner could not establish *Strickland's*

---

[1] It is well-settled that if one of *Strickland's* prongs disposes of an ineffective assistance claim, a court is not required to analyze the second prong. *Strickland*, 466 U.S. at 697 (explaining that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one").

2

prejudice prong. Petitioner first objects that the Magistrate Judge erred by relying on the transcript from the plea hearing instead of two affidavits submitted by Petitioner. Both affidavits contain facts that pertain to *Strickland's* deficiency prong. (*Affidavits*, ECF Nos. 11-1, at PAGE ID # 104–06, 108–09.) As already explained, however, the state appellate court did not reach the deficiency prong. This objection is also without merit.

Petitioner next objects to the Magistrate Judge's determination that the state appellate court reasonably concluded that the state trial court remedied any misinformation about parole eligibility provided by Petitioner's counsel. Petitioner asserts that he was "promised that if he pled guilty he would not receive the 'high end' of the sentencing range," and that the state trial court had informed Petitioner that the "high end" of the sentencing range was a life term with the possibility of parole after 52 years. (*Objections*, ECF No. 21, at PAGE ID # 565.) In support of this assertion, however, Petitioner points to an excerpt from the following exchange about the prosecution's agreement not to seek the "high end" of the sentencing range—i.e., a life sentence with no possibility of parole.

> THE COURT: Is there a plea agreement in this case?
>
> [THE PROSECUTION]: Judge, upon the Defendant's plea to Count 1 and its specifications, Count 5 and Count 6, the State will ask the Court to dismiss Counts 2 and 4 from the indictment [in one matter] and the single charge in [another matter].
>
> THE COURT: Counsel, there's an additional part of this agreement, is there not?
>
> [THE PROSECUTION]: Yes, there is Judge. The state has agreed not to ask the Court to impose a sentence of life with no possibility of parole, and the state will not seek the minimum sentence in this case.
>
> THE COURT: Is that your understanding of the agreement, Counsel?
>
> [DEFENSE COUNSEL]: Yes, it is, your honor.

3

> THE COURT: [Defendant], did you hear the agreement as it was stated for the record?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Is that also your understanding of the agreement that you had with the state?
>
> THE DEFENDANT: Yeah.
>
> THE COURT: Has anybody threatened you to force you to plead guilty?
>
> THE DEFENDANT: No.
>
> THE COURT: Again, sir, I need you to answer out loud.
>
> THE DEFENDANT: No.
>
> THE COURT: You understand that if any promise has been made to you by anyone, that those promises are not binding on the Court, and if you plead guilty, the Court alone—that is, the Judge—will decide your sentence and you could receive the maximum penalty prescribed by law?
>
> THE DEFENDANT: Yea—yes.
>
> THE COURT: Other than the agreement that's been stated in open court, was there any other promise made to you by any person to get you to plead guilty today?
>
> THE DEFENDANT: Just, other than the—low end would be taken off and the high end would be taken off.
>
> THE COURT: All right. But other than that, there's no other promise?
>
> THE DEFENDANT: No.

(*Transcript*, ECF No. 12–1, at PAGE ID # 456–57.) The state trial court also specifically informed Petitioner that he faced a maximum penalty of a life sentence with the possibility of parole after 52 years.

> THE COURT: Now, before you plead guilty, I need to be certain that you understand these proceedings. You do understand the nature of the charges against you?

4

THE DEFENDANT: Yes.

THE COURT: You understand the maximum penalty the Court could impose, is life imprisonment with a possibility of parole after 52 years and a fine of $35,000?

THE DEFENDANT: Yes, ma'am.

(*Id.*, at PAGE ID # 455.)

On this record, the state appellate court reasonably concluded that the Petitioner could not establish *Strickland's* prejudice prong. Petitioner claims that when he testified about the "high end" of the sentencing range, he was referring to life with parole eligibility after 52 years. But it was reasonable for the appellate court to conclude that the "high end" end of the sentencing range referred to life without any possibility of parole given that this reference immediately followed a discussion about the prosecution's agreement not to seek that sanction. The reasonableness of that conclusion is bolstered by the fact that the trial court explained that Petitioner faced a "maximum penalty" life with a possibility of parole after 52 years. It was thus reasonable for the appellate court to conclude that the trial court remedied any misinformation about parole eligibility that Petitioner's attorney had conveyed to Petitioner. The Magistrate Judge correctly determined that the state appellate court's conclusion was not contrary to United States Supreme Court precedent, an unreasonable application of federal law, or an unreasonable determination of facts.

Petitioner also objects asserting that the Magistrate Judge determined "the transcript of a plea hearing will always insulate the plea from being challenged on the basis that counsel promised the defendant a lesser sentence" than the one that is ultimately imposed. (*Objections*, ECF No. 21, at PAGE ID # 567.) In support of this objection, Petitioner relies on *Blackledge v. Allison*, 431 U.S. 63 (1977). In that case, the Supreme Court held that summary dismissal of a

5

habeas petition was improper when the petitioner, a North Carolina inmate, claimed that he pleaded guilty because he was promised that he would receive a ten-year sentence, but he instead received a seventeen to twenty-one-year sentence after his guilty plea was accepted. 431 U.S. at 68–69. The Supreme Court explained "that no procedural device for the taking of guilty pleas is so perfect in design and exercise as to warrant a per se rule rendering it 'uniformly invulnerable to subsequent challenge.'" *Id.* at 73 (citation omitted). The Supreme Court further explained, however, that because of deficiencies in North Carolina's plea proceedings at that time, the Supreme Court could not determine whether the allegations in the petition, when measured "against the record of the plea hearing, were so 'patently false or frivolous' as to warrant summary dismissal." *Id.* at 76. (internal citations omitted). At the time, North Carolina's pleading procedures "reflected the atmosphere of secrecy which then characterized plea bargaining generally." *Id.* at 76–77. Indeed, there was no transcript of the plea proceeding made. *Id.* at 77. Instead, the record was made by having the petitioner fill out a standard form which the clerk of court then transcribed onto a second copy of the form that the petitioner then signed. *Id.* at 65. Because there was no transcript of the plea proceeding, the Supreme Court concluded that the petition warranted more thorough consideration than a summary dismissal and the case was remanded to allow the petitioner a full opportunity to develop and present relevant facts. *Id.* at 82–83.

In this case, there was a transcript from the plea hearing in the state trial court. Moreover, the Magistrate Judge did not adopt a per se rule that a plea hearing transcript always insulates a guilty plea from the type of challenge that Petitioner raises in this case. Rather, the Magistrate Judge reviewed the state appellate court's determination of *Strickland's* prejudice prong— a determination that was due double deference— and found that it was reasonably

supported by the record, which included the plea hearing transcript. *Blackledge* is thus distinguishable and this objection is without merit.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court must consider whether to issue a COA. A state prisoner who seeks a writ of habeas corpus in federal court does not have an automatic right to appeal a district court's adverse decision unless the court issues a COA. 28 U.S.C. § 2253(c). When a claim has been denied on the merits, a COA may be issued only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)). When a claim has been denied on procedural grounds, a certificate of appealability may be issued if the petitioner establishes that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

The Court **DECLINES** to issue a COA. The Court is not persuaded that reasonable jurists could debate whether the state appellate court reasonably concluded that Petitioner could not demonstrate *Strickland's* prejudice prong.

**IT IS SO ORDERED.**

Date:                                                    /s/ *James L. Graham*
                                                         **JAMES L. GRAHAM**
                                                         **United States District Court Judge**

7